UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD DAVIS #223815,

    Plaintiff,

v.

File No. 1:07-CV-200

HON. ROBERT HOLMES BELL

MICHIGAN DEPARTMENT OF
CORRECTIONS, ALAN BONN, and
BRAD PURVES,

    Defendants.
                                         /

## **O P I N I O N**

This is a *pro se* 42 U.S.C. § 1983 civil rights action filed by Plaintiff Ronald Davis, a prisoner in the custody of Defendant Michigan Department of Corrections ("MDOC"). Plaintiff filed a complaint for damages and injunctive relief, alleging that Defendants MDOC, and MDOC employees Alan Bonn and Brad Purves, terminated him from his prison food service job in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 *et seq.*, and his rights under the First, Fifth, Eighth and Fourteenth Amendments. (Dkt. No. 1, Compl.) In a prior order, this Court dismissed all of Plaintiff's claims against the MDOC on immunity grounds, except for his claim under the ADA. (Dkt. Nos. 4 & 5, 04/03/2007 Op. & Order.) The Court also dismissed Plaintiff's ADA claim against Defendants Bonn and Purves in their individual capacities, and dismissed Plaintiff's Fourteenth Amendment due process and Eighth Amendment cruel and unusual punishment

claims for failure to state a claim. *Id.* In a subsequent order, the Court dismissed Plaintiff's claims for injunctive relief and his claims for damages against Defendants Bonn and Purves in their official capacities. (Dkt. No. 90, 08/24/2009 Order.) The only claims remaining for trial are Plaintiff's ADA claim against the MDOC, and his equal protection and First Amendment retaliation claims against Defendant Bonn and Defendant Purves. (Dkt. No. 98, Final Pretrial Order 4.)

On September 28, 2009, the Court conducted a non-jury trial of this action. After a careful review of the witnesses' testimony, and the documentary evidence introduced at trial, the Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

**I.**

At all relevant times Plaintiff was incarcerated at the Riverside Correctional Facility ("Riverside" or "RCF"). Defendant Alan Bonn was the Classification Director at Riverside, and Defendant Brad Purves was the Food Service Director at Riverside.

Plaintiff's back has caused him a varying degree of pain and disability since he first injured it in 2004. In 2005 Plaintiff was diagnosed with mild degenerative changes in his lumbar spine, mild scoliosis, and a small disc protrusion. (Ex. 24.) On February 28, 2006, the MDOC Healthcare Services issued a special accommodation notice indicating that Plaintiff's work assignment was to be light duty and that he was authorized to used a cane. (Ex. 17; Ex. 101.)

Plaintiff was transferred to Riverside on May 2, 2006. Because of his disability, he requested assistance carrying his food tray and cleaning his room so that he would not have to beg other prisoners for help and end up owing them. (Ex. 101 at 3-4.) Upon his transfer to Riverside, Plaintiff requested employment in food service.

Work assignments are made by the Classification Director. If a requested work assignment is not available, the prisoner is placed in a pool until a work assignment opens up. Only the Classification Director has the ability to terminate a prisoner from a work assignment. If a work supervisor requests that a prisoner be terminated from a work assignment, the prisoner is placed on lay-in status until the Classification Director makes a decision on the request.

The Classification Director at the time Plaintiff was transferred to Riverside was Tanisha Black. Black understood that Plaintiff needed a light duty assignment, and assigned him to work in food service as a dining room worker. (Ex. 26.) On June 10, 2006, Plaintiff began working in the dining room. His job involved passing out drinks, wiping tables, and other cleaning duties. On June 12, 2006, two days after starting his job in the kitchen, Purves placed Plaintiff on lay-in status.

Plaintiff testified that he was fired from his food service job because Purves did not want anyone in his kitchen with a disability or with a walking cane.

As the food service director at Riverside, Defendant Purves oversaw kitchens for two facilities, and was responsible for 2400 meals, three times a day. Purves had little direct

contact with prisoners, as direct oversight was conducted by his assistants. Purves does not recall requesting Plaintiff's termination in June 2006, but such a request would have been consistent with his general belief, based on his prior experience, that a prisoner with medical light duty restrictions should not work in the kitchen.

Peter Marcus, an MDOC employee, worked as a food service leader at Riverside and was responsible for supervising over sixty prisoners. He observed Plaintiff's work in the dining room and testified that Plaintiff was capable of doing his job. When Plaintiff was terminated on June 12, 2006, Marcus gave Plaintiff the same advice he gives every prisoner who is unhappy – he told Plaintiff to file a grievance because that is how prisoner concerns are addressed. Marcus was not aware of any facts relating to Plaintiff after July 15, 2006, because he was disabled in a fight between prisoners on July 15, 2006, and was out of work for nearly two years.

Plaintiff filed a grievance regarding his June 12, 2006, removal and was successful at the first step of the grievance process. (Ex. 12.) After investigation it was determined that Plaintiff had been medically cleared to work in food service on light duty assignments only, and that food service could accommodate his cane restriction. (*Id.*) Plaintiff received his back-pay and was returned to his job in food service. (*Id.*)

Plaintiff testified that when he was returned to food service, Purves told him that he did not appreciate the grievance, and that once Classification Director Black was transferred, Plaintiff would be out of the kitchen for good. Purves denied making any statements to this

4

effect. However, Purves testified that he did not believe that people with medical restrictions should work in the kitchen. In making this statement, he did not differentiate between the various jobs within the kitchen. Given Purves's admitted bias against having people with medical restrictions working in the kitchen, the Court finds by a preponderance of the evidence that he made his beliefs known to Plaintiff.

In July, August, and September, Plaintiff received satisfactory or above average work reports. (Ex. 1, 2, 3.) He was promoted from dining room worker, to pots and pans worker, and eventually to relief lead pots and pans worker.

Prisoner King Green, the lead pots and pans worker, testified that Plaintiff was one of the best workers in pots and pans, and that is why he was made a relief lead a couple of months after he began working there.

In October of 2006 Defendant Bonn became the Classification Director at Riverside. As Classification Director, Bonn's duties included insuring that prisoners were placed in proper work assignments, that health and safety requirements were met, and that problems were addressed before there was an injury. Because he was new to this position, Bonn undertook an audit of work assignments and policy requirements. Bonn's audit revealed that there were no clear standards governing light duty work assignments. Bonn testified that he checked a computer listing and determined that a "light duty" accommodation meant that a prisoner was not to lift over fifteen pounds. Bonn obtained a list of 20-25 prisoners who had light duty accommodations and compared them to the jobs they were in. He then proceeded

5

to remove prisoners who had "light duty" details from assignments that he determined were not appropriate for light duty accommodation and to offer them alternative jobs.

When Bonn reviewed Plaintiff's situation, he noted that Plaintiff was working in pots and pans. One of the job duties of a "pots and pans worker" is to "lift[] heavy pots properly to avoid personal injury." (Ex. 105, MDOC Classification Prisoner Program Manual 83.) On October 26, 2006, Bonn terminated Plaintiff from his pots and pans job based on his determination that the job was not consistent with light duty restrictions.

Plaintiff challenges Bonn's determination that his light duty accommodation included a weight restriction. On December 22, 2006, at Plaintiff's request, prison nurse Barbara J. Mulnix reviewed Plaintiff's medical file, and did not find any weight stipulations listed as part of his light duty accommodation. (Ex. 21.) However, on December 27, 2006, in response to Plaintiff's request that Healthcare describe light duty, prison nurse Robert L. Prevo advised: "no buffers/floor polishing, no mopping, ok to push broom, no lifting over 15#, not to bend > 12 x /hr." (Ex. 101 at 7.)

Black, the Classification Director who originally assigned Plaintiff to a job as a dining room worker, testified that a dining room worker's job duties include washing tables, setting up the beverage line and salad bar, filling condiment containers, and doing some janitorial work. (Ex. 105 at 76.) The job duties do not involve heavy lifting. Black testified that the job of a pots and pans worker, on the other hand, could entail some heavy lifting because it involves cleaning and carrying industrial sized pots and pans used for preparing food.

6

Although Green testified that no one pan weighed more than 15 pounds, Purves testified that the pots and pans are generally lifted in groups. According to Black, it was not improper to remove Plaintiff from pots and pans based on his light duty restriction. Marcus, the food service leader, testified that a prisoner who had to request others to help him carry his food tray would not be a good candidate for a pots and pans worker, but that he could still be a good candidate for other positions within food service.

Bonn advised Plaintiff that he could request reclassification to another work assignment that met the light duty accommodations, including other jobs in the kitchen, such as a food service clerk. Plaintiff refused his offer. Prisoners who refuse to participate in program classification or who refuse to accept an assignment, are classified as Unemployable or "00" status. (Ex. 103, Policy Directive ("PD") 05.01.100 ¶ YY; Ex. 105, Classification Prisoner Program Manual at 28-29.) Because Plaintiff refused to accept a light duty work assignment, Bonn classified him as "Medically Unemployable" pursuant to PD 05.01.100.

On November 1, 2006, Defendant Bonn issued a memorandum clarifying that prisoners with light duty accommodations may only be classified to the following work assignments: tutor, clerk, library, law library, or "[o]ther positions deemed applicable by the Classification Director." (Ex. 13; Ex. 102.) The memo further provides:

> Prisoners who have active H/S Accommodations for "Light Duty" may be reclassified from their current work assignments and placed on any of these "Light Duty" positions/pools for which they are otherwise qualified. Further, Prisoners may be classified as "Medically Unemployable" in accordance with PD 05.01.100 for the duration of the H/S Accommodation for Light Duty; or until classified to a "Light Duty Assignment" by the Classification Director.

(*Id.*)

7

Plaintiff filed a grievance against Bonn, claiming that he was terminated in violation of the ADA on the basis of his disability, and seeking reinstatement to his job in the kitchen as the relief lead in pots and pans, and back pay. (Ex. 5.) Bonn responded that Plaintiff has a light duty (less than 20 pounds) work assignment; that Plaintiff could request reclassification to a work assignment that met the requirements of a light duty accommodation; and that because Plaintiff declined to reclassify to any of the light duty work assignments, he would remain on his current classification of "Medically Unemployable." (Ex. 5, Bonn Resp. to Grievance.) Plaintiff's grievance was denied at Step II based on a finding that he was not terminated because of his disability, but because the food service work assignment did not meet the requirements of a light duty assignment. (Ex. 5, Step II Resp.)

Because Plaintiff continued to refuse to work in any of the available light duty assignments, he was continued on Medically Unemployable or "00" status. (Ex. 27, 28, 29, 30, 31.) In January 2007, Plaintiff, for the first time, asked for a job as a food service clerk. However, there were no food service clerk positions available at that time, so Plaintiff was placed in the pool to await a vacancy. Plaintiff's February 27, 2007, program classification report indicates that he again expressed a wish to be placed into the kitchen pool and that he was making a request to the medical department to lift his light duty assignment. (Ex. 31.)

On March 2, 2007, Plaintiff was transferred to Mound Correctional Facility. (Ex. 35.) The transfer order states that "[t]ransfer is initiated per NRF SCC." NRF is the Mound

8

Correctional Facility and SCC is the Security Classification Committee. Plaintiff's other transfers typically gave reasons such as for medical treatment, to make room for another prisoner, or to separate prisoners. (Ex. 32, 33, 34, 36, 37.) As of March 2, 2007, Plaintiff's medical transfer indicated that he was still on light duty work assignment. (Ex. 18.) Bonn had no input into Plaintiff's transfer from Riverside to Mound.

## II.

Plaintiff is a well-spoken prisoner who was polite and respectful throughout this bench trial. Plaintiff brought this action based upon his commitment to the rights of disabled persons and his sincere dispute over what it means to have a "light duty" accommodation.

### A. Equal Protection

Plaintiff's equal protection claim is based on his allegation that Defendants Purves and Bonn discriminated against him on the basis of his disability. "Disabled persons are not a suspect class for purposes of an equal protection challenge." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008) (citing *Tennessee v. Lane*, 541 U.S. 509, 522 (2004)). Accordingly, a state may treat disabled persons differently, so long as the state's actions are rationally related to some legitimate governmental purpose. *Id.* (citing *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366-68 (2001)).

Defendants Bonn and Purves did not violate Plaintiff's right to equal protection. There is no evidence that Purves was involved in any way with Plaintiff's termination in October 2006. Accordingly, Plaintiff has no equal protection claim against Purves. As to

Bonn, the Court finds that Bonn terminated Plaintiff, not on the basis of any disability, but because Plaintiff was working in pots and pans, a job that involved heavy lifting, while Plaintiff was on a light duty medical accommodation which prohibited lifting anything over fifteen pounds. Although there is no dispute that Plaintiff had capably performed various jobs in the food service area for four months, there is also no dispute that Plaintiff was on light duty because of his degenerative back condition. Defendant Bonn has a legitimate interest in the health and safety of the prisoners in his care and in guarding the state from liability. Bonn was not required to wait for a back injury before taking remedial action. Removing Plaintiff from a job that involved heavy lifting was rationally related to a legitimate governmental interest. Accordingly, Defendants are entitled to judgment on Plaintiff's equal protection claim.

**B. Retaliation**

Plaintiff alleges that Defendants Bonn and Purves retaliated against him for his exercise of First Amendment rights when they terminated Plaintiff from his food service position.

The elements of a retaliation claim are:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff has produced evidence on the first two elements of his claim. Plaintiff engaged in protected conduct by filing grievances against Purves and Bonn, and Plaintiff's termination from his pots and pans job was an adverse action that would deter a person of ordinary firmness from continuing to engage in protected conduct. Plaintiff has not, however, proven by a preponderance of the evidence that there was a causal connection between his protected conduct and his termination from the pots and pans job.

Even if Purves made the retaliatory statements Plaintiff ascribes to him, there is no evidence that Purves was involved in the decision to remove Plaintiff from the pots and pans position in October 2006. Bonn testified that he terminated Plaintiff from his food service job as a result of his audit of prisoners with light duty accommodations. Both Bonn and Purves testified that Purves had no involvement in Plaintiff's termination. Plaintiff produced no evidence to the contrary. The Court finds that Purves was not involved in Plaintiff's October 2006 termination from his food service job. Accordingly, there is no causal connection between Plaintiff's June grievance against Purves and Plaintiff's October termination from his food service job.

Plaintiff did not file a grievance against Bonn prior to his October 2006 termination. Plaintiff's October 2006 termination from his food service job was the result of Defendant Bonn's audit. There is no evidence that Bonn knew Plaintiff prior to his audit, that he harbored any animus toward Plaintiff, or that he was influenced by Plaintiff's grievance against Purves. Plaintiff has failed to establish by a preponderance of the evidence that his termination was motivated in any respect by his protected conduct.

11

Plaintiff did file a grievance against Bonn after his termination. To the extent Plaintiff is arguing that he was kept on medically unemployable status, denied food service jobs, and transferred to another prison as a result of that grievance, the Court finds no evidence to support a causal connection between the grievance and these actions. Plaintiff has not contradicted Bonn's testimony that Plaintiff refused available light duty work assignments, and that when he finally did request a light duty assignment in the kitchen, there were no available openings. Nor has Plaintiff contradicted Bonn's testimony that he had no input into the decision to transfer Plaintiff to another prison. The Court concludes that Defendants Purves and Bonn are entitled to judgment on Plaintiff's retaliation claim.

**C. Americans with Disabilities Act**

Plaintiff claims that the MDOC violated his rights under the ADA. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "The ADA applies to both federal and state prisons." *Mingus v. Butler*, --- F.3d ---, 2010 WL 9978, at *6 (6th Cir. Jan. 5, 2010) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998)). "[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 159 (2006).

The elements Plaintiff must prove for his ADA claim are that:

(1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of [his] disability.

*Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003); *see also Hedrick v. W'ern Reserve Care Sys.*, 355 F.3d 444, 454 (6th Cir. 2004) (noting that while other circuits do not require a plaintiff to demonstrate that disability was the sole reason for the adverse employment action, that is the law in the Sixth Circuit).

Plaintiff was not removed from his pots and pans job "solely because of his disability." As this Court has already found, Plaintiff was removed from the pots and pans job because had a "light duty" medical accommodation that limited the jobs for which he was qualified.

A failure to accommodate may qualify as discrimination. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 724 (6th Cir. 2000). However, Plaintiff was offered and rejected alternative work for which he was qualified. "[I]f an individual rejects a reasonable accommodation, the individual will no longer be considered a qualified individual with a disability." *Hedrick,* 355 F.3d at 457.

The Court concludes that Plaintiff has not established that Defendants violated the ADA. Because the Court has determined that Plaintiff has not shown a violation of the ADA, the Court need not consider the issue of immunity under *United States v. Georgia*, 546 U.S. 151, 159 (2006). *Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843, 847-48 (6th Cir. 2009).

**III.**

Defendants are entitled to judgment on all of Plaintiff's claims.

A judgment consistent with this opinion will be entered.


Dated: February 1, 2010              /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     UNITED STATES DISTRICT JUDGE